**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **EQUAL EMPLOYMENT OPPORTUNITY** ) | |
| **COMMISSION,** ) | |
| **Plaintiff,** ) | |
| ) | **Case No. 3:18cv1760-NJR-MAB** |
| **v.** ) | |
| ) | |
| **CROSSMARK, INC.,** ) | |
| ) | |
| **Defendant.** ) | |

**CONSENT DECREE**

1.  Plaintiff Equal Employment Opportunity Commission instituted this action against

Defendant CROSSMARK, Inc. ("CROSSMARK") to enforce provisions of Title I of the

Americans with Disabilities Act, as amended. In its Complaint, the EEOC alleged that

CROSSMARK violated the ADA by discriminating against Rhonda Whitecotton, Mary Ann

Sawant, Kathryne Guilfoyle, Tanesha Harper, Aide Moran, Marilyn Prazenica, Howard Nitzberg,

Talley Melear, Kim Roubison, Karen Simpson, Shelly Watson, Betty Shaffer, and other aggrieved

individuals who receive relief under this Decree (hereinafter collectively "Aggrieved Individuals")

by refusing to allow them to sit more than ten minutes every two hours as an accommodation for

their various disabilities in violation of Sections 102(a), (b)(1), (3) and (5) of Title I of the ADA,

42 U.S.C. §§ 12112(a), (b)(1), (b)(3) and (b)(5). CROSSMARK denies that it violated the ADA

with respect to any individual, including but not limited to the Aggrieved Individuals.

2.  For purposes of settlement and compromise only, the parties have advised the Court

that they wish to resolve the instant controversy without the expense, delay, and burden of further

litigation.

3.  This Decree fully and finally resolves all claims alleged in the Complaint.

4.      The terms of this Decree are adequate, reasonable, equitable and just, and the rights of the parties, Aggrieved Individuals, and the public interest are adequately protected by the Decree.

5.      The parties agree to the jurisdiction of this Court over the subject matter of this action and the parties to the case.

6.      The parties agree that this Decree is fair, reasonable, and not contrary to law.

THEREFORE, it is the finding of this Court, made on the pleadings and on the record as a whole and upon agreement of the parties, that: (i) this Court has jurisdiction over the parties and the subject matter of this action, (ii) the requirements of the ADA will be carried out by the implementation of this Decree, (iii) this Decree is intended to and does resolve all matters in controversy in this lawsuit among the parties, and (iv) the terms of this Decree constitute a fair and equitable settlement of all issues in this lawsuit.

**THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED AS FOLLOWS:**

**GENERAL PROVISIONS**

7.      This Decree is being entered with the consent of the parties for purposes of settlement, shall not constitute adjudication on the merits of this lawsuit and shall not be construed as an admission by CROSSMARK or any of its affiliates or related entities of any violation of the ADA.

8.      In all matters arising from or relating to employment, CROSSMARK shall not engage in any employment practice which unlawfully discriminates against an employee or applicant under the Americans with Disabilities Act, including but not limited to refusing to provide reasonable accommodation to a qualified individual with a disability, or discharging a qualified individual with a disability because of his or her disability.

9. CROSSMARK shall not discriminate or retaliate against any Aggrieved Individual or any other person because the individual filed a charge, gave testimony, assisted or participated in any manner in any investigation, proceeding, or hearing under the ADA; engaged in any protected activity; or who has or will receive relief under the terms of this Decree.

10. This Decree shall remain in effect for 54 months from the date it is entered and may be extended by the Court upon a showing by the EEOC that the standard for modifying and extending a consent decree is satisfied. This Court shall retain jurisdiction over this matter for purposes of compliance.

11. "Aggrieved Individuals" for purposes of this Decree include Charging Parties Mary Ann Sawant, Kathryne Guilfoyle, Tanesha Harper, Aide Moran, Marilyn Prazenica, Howard Nitzberg, Talley Melear, Kim Roubison, Karen Simpson, Shelly Watson, and Betty Shaffer; Rhonda Whitecotton; individuals identified by the EEOC in this litigation through its disclosures pursuant to Fed. R. Civ. P. Rule 26(a), unless the EEOC determines any individual has already received appropriate relief or they do not wish to receive relief under this Decree; and individuals the EEOC identifies pursuant to paragraphs 16-18 below.

**MONETARY RELIEF**

12. CROSSMARK shall pay the amount of $2,650,000 (Two Million Six Hundred Fifty Thousand Dollars) to the Aggrieved Individuals as set forth below. This amount represents back pay, compensatory damages, prejudgment interest, punitive damages and all other monetary relief to which the Aggrieved Individuals may be entitled under the claims raised in this suit.

13. In the event of non-payment, it is acknowledged that the monetary relief set forth in this Decree is a debt owed to and collectible by the United States or its proxy, notwithstanding that the Aggrieved Individuals are the ultimate beneficiaries of this relief.

3

14.     Prior to receipt of monetary relief under this Decree, each living Aggrieved Individual shall sign the Release attached as Exhibit 1, and a representative of each deceased Aggrieved Individual shall sign the Release attached as Exhibit 2.

15.     The receipt of individual monetary relief by an Aggrieved Individual shall not be conditioned upon his or her agreement to any terms or conditions not explicitly stated in this Decree or Exhibits 1 or 2.

16.     Within 30 days after entry of this Decree, CROSSMARK shall provide EEOC with a list of all Event Specialists who requested a sitting accommodation from January 2014 to present. This list shall include the employee's name, social security number, last known address and telephone number. CROSSMARK may designate any individual on the list whom it considers an Aggrieved Individual for purposes of this Decree, though the EEOC retains final authority to determine who is an Aggrieved Individual.

17.     If requested by the EEOC for the purpose of determining whether a person is an Aggrieved Individual for purposes of this Decree, CROSSMARK will provide to the EEOC the accommodation file for any individual identified on the list required by paragraph 16 above within 15 days of the EEOC's request.

18.     Upon review of the list provided by CROSSMARK as required by paragraph 16 above and supplemental information as needed, the EEOC will provide CROSSMARK with two separate lists of Aggrieved Individuals as follows:

        a. a list of those Aggrieved Individuals who are known to be living, with the individual's name, date of birth, address, amount of damages to be paid, and designation of amounts as backpay and compensatory damages; a completed

and signed form W-9 for each individual; and a signed Release in the form attached as Exhibit 1 for each individual; and

b.  a list of those Aggrieved Individuals who are known to be deceased, with the individual's name, date of birth, date of death, the name of the individual or estate to whom or which payment should be made, address, amount of damages to be paid, and designation of amounts as backpay and compensatory damages; a completed and signed form W-9 for the individual or estate to whom payment is to be made; and a signed Release in the form attached as Exhibit 2 for each individual.

19.     It is anticipated and understood that EEOC will provide CROSSMARK the list of living Aggrieved Individuals separately from the list of deceased Aggrieved Individuals, and CROSSMARK shall not delay the payment of monetary relief to living Aggrieved Individuals because of delays in identification of deceased Aggrieved Individuals.

20.     Within 30 days after the EEOC provides CROSSMARK with each list and accompanying forms referenced in paragraph 18 above, CROSSMARK shall pay the amounts of damages separately to each Aggrieved Individual, or his or her estate or heirs, by check mailed via certified mail to the address provided by the EEOC.  CROSSMARK shall make no deductions from the amounts paid to the Aggrieved Individuals except the employee's portion of applicable withholdings and taxes on amounts designated as backpay. CROSSMARK shall enclose with each check an itemized statement of the backpay and damages paid and applicable withholdings and taxes deducted, if any.  CROSSMARK shall make payments in two cycles, one set of payments to the Aggrieved Individuals who are living and one set of payments to the heir/estates of the Aggrieved Individuals who are deceased.

21.     In the event any checks issued to Aggrieved Individuals or their estates or heirs are not cashed / negotiated within 90 days of issuance, CROSSMARK shall provide EEOC notice of which checks were not negotiated.  CROSSMARK will provide such notice within 120 days after issuance of the checks.  Upon receiving such notice, the EEOC will attempt to provide CROSSMARK with an alternate address to deliver payment to the Aggrieved Individual(s).  If any settlement funds have not been negotiated within 24 months of entry of this Decree, CROSSMARK shall pay the remaining funds equally to Disability Rights Texas and Volunteers of America - Vocational Opportunity and Training Services Program.

22.     As required by law, CROSSMARK shall issue to each Aggrieved Individual or payee an IRS Form W-2 for the designated backpay amount and an IRS Form 1099 for the designated non-backpay amount.

**EQUITABLE RELIEF**

23.     Within 3 months of entry of this Decree, CROSSMARK shall designate one or more qualified ADA Coordinators, whose primary job duty will be to insure CROSSMARK's compliance with the ADA and the provision of reasonable accommodation to Event Specialists and applicants for Event Specialist positions who are qualified individuals with a disability under the ADA.  In addition, the ADA Coordinators will:

      a.   receive all requests for reasonable accommodation from Event Specialists and applicants for Event Specialist positions;

      b.   engage in an interactive process with Event Specialists and applicants for Event Specialist positions who request reasonable accommodation;

    c.  provide a reasonable accommodation if available and appropriate to enable a qualified individual with a disability to perform the essential functions of the Event Specialist position;

    d.  prior to denying a request for reasonable accommodation, consult outside resources such as the Job Accommodation Network (https://askjan.org) to confirm all possible reasonable accommodations have been considered and conduct an individualized assessment if a potential modification or adjustment is considered to pose an undue hardship.

24.    CROSSMARK shall have no set limit on the amount of time an Event Specialist can sit as a reasonable accommodation and will evaluate each request to sit on an individual basis and as a potential reasonable accommodation provided in accordance with the ADA.

25.    Within 3 months of entry of this Decree, CROSSMARK shall:

    a.  conduct a job analysis of the Event Specialist position and revise its Event Specialist job description to clearly identify the essential functions of the position and identify functions that may vary depending on the requirements of any particular event;

    b.  revise its Disability Discrimination policy to inform employees regarding their right to obtain a reasonable accommodation under the ADA and to be free from retaliation for requesting accommodation; provide examples of potential accommodations, including, where reasonable, sitting; set forth in clear, easy-to-understand language the process for requesting a reasonable accommodation; and incorporate the notice attached as Exhibit 3;

c.   establish a point of contact and a toll-free telephone number for employees to use to request a reasonable accommodation under the ADA, determine the status of a request for accommodation, and obtain information or report concerns related to reasonable accommodation under the ADA;

d.   draft an Accommodation Manual to provide resource information for the ADA Coordinators, set forth procedures for receiving, assessing, granting, and denying requests for reasonable accommodation, and provide examples of common modifications and adjustments that can be made to the manner in which the Event Specialist job is customarily performed in order to enable qualified individuals with a disability to perform the essential functions of the position;

e.   draft a Supervisor's Accommodation Manual to provide resource information and instructions for Event Specialist Supervisors and Managers regarding how to recognize an employee's need for a potential accommodation, how to respond to requests for accommodation, how to avoid discouraging employees from requesting or exploring their right to an accommodation under the ADA and prevent retaliation;

f.   draft a job description for the ADA Coordinator position; and

g.   provide a copy of each document described in this paragraph to the EEOC.

### EMPLOYEE EDUCATION & TRAINING

26.   Within 4 months of entry of this Decree, CROSSMARK shall place a link to its revised Disability Discrimination policy, contained within the CROSSMARK General Information Guide, in the "Quick Links" section of the CROSSMARK Connect intranet landing

page and will inform all newly-hired employees of the policy during the standard on-boarding process in the same manner as other employment-related policies.

27.    Within 4 months of entry of this Decree, CROSSMARK shall post the notice attached as Exhibit 3 in the "Quick Links" section on the landing page of the CROSSMARK Connect intranet site and shall leave the "Quick Link" to the notice for at least 3 months.

28.    Within 4 months of entry of this Decree and annually thereafter, CROSSMARK shall provide training (1 hour of live webinar training the first year and use of a recorded training each subsequent year) to all Event Specialist Supervisors and Managers regarding its revised Disability Discrimination policy, the supervisor's/manager's role in the reasonable accommodation process, the prohibition against retaliating against individuals who request reasonable accommodation, the accommodation point of contact and a toll-free telephone number to share with employees as needed, how to recognize an employee's need for a potential accommodation, how to respond to requests for accommodation, and how to avoid discouraging employees from requesting or exploring their right to an accommodation under the ADA. CROSSMARK shall provide similar training to newly-hired or promoted Event Specialist Supervisors and Managers.

29.    Within 4 months of entry of this Decree and annually thereafter, CROSSMARK shall provide training internally or through a third party (8 hours the first year and 4 hours each subsequent year) to each ADA Coordinator regarding employers' obligations and employees' rights under the ADA, types of reasonable accommodation required under the ADA and how to research possible accommodations, the interactive process required under the ADA, the ADA's prohibition against retaliation, the ADA Coordinator's role in the reasonable accommodation

process, and CROSSMARK's revised Reasonable Accommodation policy.   The training is not required to be provided in a single session and may be spread throughout the year.

## RECORD-KEEPING & REPORTING

30.    During the term of this Decree, CROSSMARK shall maintain (i) records created as part of this Decree, (ii) documents submitted or created as part of the reasonable accommodation process, and (iii) all materials used in the training required by this Decree, and shall make them available to the EEOC in electronic format within 45 days upon request.

31.    Within 6 months of entry of this Decree and annually thereafter, CROSSMARK shall certify to the EEOC that all ADA Coordinators received the training required by this Decree, and that the training referenced in paragraph 28 above was provided to the Event Specialist Supervisors and Managers and tracked in the same manner as other employment discrimination and harassment training.

32.    Within 6 months of entry of this Decree and annually thereafter, CROSSMARK shall submit a report to the EEOC identifying by name, address, telephone number and last 4 digits of social security number, each Event Specialist who requested a sitting accommodation during the previous 12 months and stating the accommodation that was provided or stating that no accommodation was provided and, for each request that CROSSMARK denied, an explanation of why a sitting accommodation was not provided. Upon written request by the EEOC, CROSSMARK shall provide, within 30 days, any additional information about its denial of a sitting accommodation to a specific Event Specialist.

33.    All certifications, notices, reports, and other information required to be submitted to the EEOC under this Decree shall be submitted by email to: EEOC-SLDO-decree-monitoring@eeoc.gov.

## MISCELLANEOUS PROVISIONS

34.     Except as otherwise specified in this Decree, the terms of this Decree apply to all CROSSMARK facilities and any location where it does business or provides services in the United States.

35.     "Event Specialist" is defined as an individual who performs product demonstrations of a specific product at a retail customer location and performs merchandising and/or Freeosk machine tasks.

36.     By entering into this Decree, the parties intend to resolve only the charges of discrimination that created the procedural foundation for this suit and the claims the EEOC brought in this suit.  No other pending or future charges, if any, are affected by this Decree.

37.     The terms of this Decree are binding upon CROSSMARK's present and future directors, officers, managers, agents, successors, and assigns. CROSSMARK shall provide a copy of this Decree to any entity who proposes to acquire or merge with CROSSMARK, or any proposed successor, prior to any acquisition, merger, or succession.

38.     At any time during the term of this Decree, a party may petition the Court to enforce any term of this Decree. Should the Court determine that a party has not complied with any term of this Decree, the Court shall grant appropriate relief.

Exhibit 1

## RELEASE

In consideration for $ [INSERT AMOUNT] paid to me by CROSSMARK, Inc., in connection with the resolution of *EEOC v. CROSSMARK, Inc.*, Civil Action No. 3:18-cv-1760 (S.D. Ill.), I waive my right to recover for any claims of failure to provide reasonable accommodation and discharge arising under the Americans with Disabilities Act that I had against CROSSMARK, Inc., prior to the date of this release, that are alleged in EEOC's complaint in the action identified above, that could have been alleged by EEOC in its complaint, or were alleged by me in any Charge of Discrimination I filed with the EEOC and upon which the above identified lawsuit is based.

**IT IS SO ORDERED.**

DATE: November 20, 2019

HONORABLE NANCY J. ROSENSTENGEL
UNITED STATES DISTRICT JUDGE

FOR PLAINTIFF EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION:

SHARON FAST GUSTAFSON
General Counsel

JAMES L. LEE
Deputy General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel

/s/ Andrea G. Baran
ANDREA G. BARAN, Mo. Bar No. 46520
Regional Attorney
C. FELIX MILLER, Mo. Bar No. 28309
Supervisory Trial Attorney
JENNIFER ARENDES, Mo. Bar No. 46638
Senior Trial Attorney
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
St. Louis District Office
1222 Spruce St., Room 8.100
St. Louis, MO 63103
(314) 539-7916 (telephone)
(314) 539-7895 (fax)
andrea.baran@eeoc.gov
felix.miller@eeoc.gov
jennifer.arendes@eeoc.gov

FOR DEFENDANT CROSSMARK,
INC.:

CAROLE DEMARCO
CROSSMARK Acting General Counsel

/s/ Rodney Harrison
RODNEY HARRISON, Mo. Bar No. 44566
Ogletree, Deakins, Nash, Smoak &
Stewart
7700 Bonhomme, Suite 650
St. Louis, Missouri 63105
(314) 802-3949 (telephone)
rodney.harrison@ogletree.com

Exhibit 2

<u>RELEASE</u>

In consideration for $ [INSERT AMOUNT] paid to me by CROSSMARK, Inc., in connection with the resolution of *EEOC v. CROSSMARK, Inc.*, Civil Action No. 3:18-cv-1760 (S.D. Ill.), I waive the rights of the estate or heirs of [Aggrieved Individual] to recover for any claims of [Aggrieved Individual] of failure to provide reasonable accommodation and discharge arising under the Americans with Disabilities Act that [Aggrieved Individual] had against CROSSMARK, Inc., prior to the date of this release, that are alleged in EEOC's complaint in the action identified above, that could have been alleged by EEOC in its complaint, or were alleged by [Aggrieved Individual] in any Charge of Discrimination [Aggrieved Individual] filed with the EEOC and upon which the above identified lawsuit is based.

Exhibit 3



## EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
### St. Louis District Office

## NOTICE

This Notice is being posted as part of the relief required by the Consent Decree entered in the lawsuit *EEOC v. CROSSMARK, Inc.*, Civil Action No. 3:18-cv-1760 (S.D. Ill.).

**Federal law requires employers to provide reasonable accommodation to qualified individuals with a disability.**

**CROSSMARK supports and will comply with such Federal Laws in all respects and will provide a reasonable accommodation to all employees with a disability who are entitled to an accommodation. An example of a potential accommodation includes, where reasonable, sitting.**

**Further, CROSSMARK will not take any action against employees because they have requested or been provided an accommodation or otherwise exercised their rights under the law.**

Employees may report instances of discrimination or the denial of an accommodation to:

**Jennifer Arendes, Attorney**
**Equal Employment Opportunity Commission**
**1222 Spruce St., Room 8.100; St. Louis, MO 63103**
**Phone: 314-539-5916**
**Email: Jennifer.arendes@eeoc.gov**

**For more information about discrimination and how to file a charge with the EEOC go to: www.eeoc.gov.**